Mallett *v.* Bamber.

---

ELIZA MALLETT et al., appellants,

*v.*

ISAAC BAMBER, respondent.

Although the allowance of the costs, expenses and counsel fees of the caveators against the probate of a will is, by statute, discretionary with the court, yet, when there exist no reasonable grounds for contesting such probate, or the litigation is needlessly protracted and expensive, such allowance should be denied.

---

Appeal from decree of Passaic orphans court.

*Mr. C. L. Corbin,* for appellants.

*Mr. S. Tuttle,* for respondent.

THE ORDINARY.

The orphans court of Passaic county, by its decree, after litigation before it, admitted to probate a paper purporting to be the will of Mary Hampson, deceased; and, adjudging that the caveators had reasonable cause for opposing the will, directed

that the costs and expenses of the litigation, and a counsel-fee of
$200 to the counsel of each side, be paid out of the estate.
From so much of the decree as awards costs, expenses and coun-
sel-fees to the caveators, the proponents appealed to this court.
The printed book of the evidence contains over three hundred
pages. The testimony was taken by question and answer. The
questions are more than twenty-six hundred in number. A
great part of the testimony is utterly irrelevant. The caveators
were Isaac Bamber, a brother, and William L. Bamber, a
nephew of the testatrix. She was a widow, and had no chil-
dren. By her will, she gave to her brother Peter, in England,
$2 a week for life ; to two of her nieces, daughters of her sister,
Eliza Mallett, $150 each ; to Edward A. Absom, an adopted son
of Mrs. Mallet, $100, to be paid to him when of age ; to her
niece, Elizabeth Bridge, $300 ; to her niece, Leah Bridge, sister
of Elizabeth, $200, and directed that a note of $160, given to
her by James and Catharine Bridge (the latter was her sister),
be given up to them at her decease. To the Ladies' Protestant
Hospital of Paterson she gave $100, if such hospital should
exist at the time of her death, and to the Ladies' Protestant
Orphan Asylum of Paterson, $100, and gave all the rest of her
estate to Mrs. Mallett. The will was contested on the ground
of incapacity and undue influence, the influence being imputed
to Mrs. Mallett. The court very justly adjudged that neither
ground of objection was maintained. The award of costs to
caveators in such cases is left to the discretion of the court, but
it is a discretion which should be carefully exercised ; and while,
on the one hand, due examination and scrutiny into the circum-
stances of the making of a will are not to be discouraged, con-
tests not undertaken in good faith, or, if entered upon *bona fide,*
conducted in such a manner as to occasion needless expense, are
in no wise to be encouraged. The estate, in this instance, is not
large ; but whether the estate be large or small, the principles·
and the rule are the same. A very careful examination and
consideration of the testimony leads me to the conclusion that
there was no reasonable ground for the belief on the part of the
caveators that the testatrix was incompetent to make a will, or

Mallett v. Bamber.

that it was the result of undue influence on the part of Mrs. Mallett. They knew that the testatrix was not well disposed towards them, on account of her resentment of their treatment of her, and they had no reason, under the circumstances, to expect that she would give them any part of her estate, by any testamentary disposition she might make. It is proved that Isaac Bamber, in the winter previous to the spring in which the will was made, urged Mrs. Mallett to get the testatrix to make a will, giving him the same amount which she would give to Mrs. Mallett, and threatened to make trouble by contesting the will, on the ground of undue influence, if she did not do so. He had grievously affronted the testatrix. She had gone to his house to pay a short visit, and she did not find the family at home. She stayed over Sunday, however, and while there entered into familiar conversation with their servant, garrulously giving to her an account of her own life, which had been humble and laborious, and making also some unpleasant but true statements of like character in regard to Isaac and his family. He was very much offended with this, and scolded her severely for it. William L. Bamber also had offended her. He had, as she said, called her " an old hag." He denies it, saying that what he said was that, on a certain occasion, she acted like a crazy old hag. He says he did not say so to her, but to Isaac, who told her of it. Between her and Mrs. Mallett there were very close sisterly relations. She confided in the latter fully, and there is no evidence that, in any instance, her confidence was abused, but, on the other hand, Mrs. Mallett appears to have been careful for her welfare, both as to her personal comfort and her pecuniary affairs. That the confidence which the testatrix reposed in Mrs. Mallett was carried to an unbusiness-like extent, even to leaving in the possession of the latter, for safe keeping with her other papers, the evidence of indebtedness of Mrs. Mallett to her, was not evidence of want of testamentary capacity or of undue influence, but simply of trust in her integrity and fidelity. It appears from his own testimony, that Isaac Bamber did not contemplate opposing the will, and was disinclined to do so (he says because he did not think it worth the trouble), but was finally persuaded, and, yielding to the urgency of others, joined

in the caveat. The litigation was not warranted, and if it had been, the extent to which it was carried, in the amount of utterly irrelevant testimony with which the record abounds, would, of itself, be sufficient ground for denying the caveators payment of their costs and counsel-fees out of the estate. *Wintermute's Will, 12 C. E. Gr. 447; S. C. on appeal, 1 Stew. Eq. 437; Perrine v. Applegate, 1 McCart. 531; Collins v. Townley, 6 C. E. Gr. 353.*

The part of the decree appealed from will be reversed, but without costs.