CATHERINE I. WARD, appellant,

*v.*

J. HENRY HARRISON, as executor of the last will and testament of Eliza C. Bishop, deceased, respondent.

[Decided February 19th, 1925.]

1. If a testator is capable of recollecting of what his property consists, and who, in consequence of ties of blood or friendship, should be the object of his bounty, and has a mind sufficiently sound to enable him to know and to understand what disposition he wants made of his property after his death, he is competent to make a will.

2. Where a testatrix, seventy-eight years old, was filthy in her habits, slovenly in her dress. careless in her deportment in the presence of company, detailed her youthful exploits in affairs of gallantry, and recounted with zest her recollection of events of her childhood days, was garrulous, and, at times, peevish and stubborn, these facts are not inconsistent with her being possessed of sufficient mental capacity to execute a valid will, when she, unassisted, furnished the information to her lawyer as to what individuals and charitable institutions were to be the object of her bounty, and what amount of money or species of property each was to receive and to what extent, and, when the will was read to her, corrected some mistakes therein, and when she kept a draft of the will eight years in her possession, making some annotations of changes therein.

3. Where one actively participates in the drawing of a will, who is the chief beneficiary thereunder, he is not presumptively chargeable with undue influence, which means an imposition upon the testator, and whether or not there was imposition, must be disclosed by other circumstances and conditions than the mere drafting of a will and being a beneficiary thereunder.

---

On appeal from a decree of the prerogative court advised by Vice-Ordinary Backes and reported in *96 N. J. Eq. 595, sub nom. In re Bishop.*

*Mr. L. Edward Herrman (Mr. Elmer E. Wigg,* of counsel), for the appellant.

*Messrs. Osborne, Cornish & Scheck,* for the respondents.

The opinion of the court was delivered by

KALISCH, J.

This is an appeal from a decree of the prerogative court, affirming a decree of the Essex county orphans court, admitting to probate a will and codicil thereto, of Eliza C. Bishop, deceased, as her last will and testament.

The attack made upon the validity of the will by the caveatrix, Catherine I. Ward, a grandniece of the testatrix, was and is—(1) mental incapacity at the time of the making and execution of the will, on December 9th, 1914; (2) undue influence.

As to the claim that the testatrix was mentally incapacitated to make and execute a valid will and codicil. our at-

tention has not been directed to any testimony in the cause which goes to the extent of establishing that at the time the two instruments were made and executed, by the testatrix, she did not possess sufficient mental capacity to know the extent of her estate, and to sum up the natural objects of her bounty. While it is true that she was seventy-eight years of age at the time when she executed her will, and was five years older when she executed the codicil, nevertheless, it appears that she, unassisted, furnished the information to Mr. Church what individuals and charitable institutions were to be the objects of her bounty, what amount of money or species of property each was to receive, and to what extent.

The will contains some thirty-one bequests, the legatees being two nieces of the testatrix and her grandniece, the caveatrix, and nephews, nieces and cousins of her husband, and her friends, including several clergymen. not forgetting her faithful servant, Jones, and his brother, and various charitable institutions.

For the appellant it is contended that she was afflicted with *senile dementia* at the times when the will and codicil were executed. But, be this as it may, we cannot omit to take into account her activities in and about her own affairs, for it is quite apparent that whether she was senile, or a senile dement, the decay of her mental faculties had not reached that stage which would render her incompetent to execute a valid will.

We approved the rule adopted by Vice-Ordinary Van Fleet in *Bennett* v. *Bennett, 50 N. J. Eq. 439* (at *pp. 445, 446*), where that learned jurist says: "By our law the right of testamentary disposition may be exercised by a person of very moderate capacity. He must have a sound and disposing mind and memory, but his memory may be very imperfect; he may not be able, at all times, to recollect the names, the persons or the families of those with whom he has been intimately acquainted; he may at times ask idle questions and repeat those which have been asked and answered; he may not have sufficient strength of memory and vigor of intellect to digest all parts of a contract, and yet be competent to

make a will. If he is capable of recollecting of what his property consists, and who, in consequence of ties of blood or friendship, should be the object of his bounty, and has a mind sufficiently sound to enable him to know and to understand what disposition he wants made of his property after his death, he is competent to make a will."

The circumstances present in the case, *sub judice,* that the testatrix became and was filthy in her habits, was slovenly in her dress, careless in her deportment in the presence of company, indulged in detailing her youthful exploits in affairs of gallantry or otherwise, and recounted with zest her recollection of events of her childhood days, and was garrulous, and at times peevish and stubborn, are not inconsistent with her being possessed of sufficient mental capacity to execute a valid will. While all these manifestations taken together may be evidence of mental decay and of moral perversion, they fall short in establishing mental incapacity, in view of the attending circumstances surrounding the preparation of the will, in which the testatrix displayed, not only a keen interest, but an alert mind, evidenced by the various character of her bequests by corrections and changes which she suggested, and by the fact that, after she executed the will, for a period of eight years she continued to manage her estate, without any intimation coming from anyone about her, or interested in her welfare, that she was mentally incompetent to manage her business affairs, to which, it appears from the evidence, she gave her personal attention. Another significant fact which must not be overlooked is, that during that period of eight years she had the draft of the will in her possession, which afforded her abundant opportunity to become thoroughly familiar with the disposition she had directed to be made of her estate after her decease. Furthermore, there were annotations, in the handwriting of the testatrix, upon the draft of the will, as stated by the caveatrix's counsel, who, in referring to the annotations, among other things, stated in the course of the hearing, in the prerogative court, the following: "It also contains the changes and corrections made by Mrs. Bishop, and I propose to use

that as bearing upon her mental capacity." But we need not pursue this line of thought any further, since the character of the corrections and annotations made on the draft of the will by Mr. Harrison and by the testatrix, not only fails to disclose mental incapacity of the testatrix, but refutes any theory of undue influence having been exercised by Mr. Harrison over the mind and will of the testatrix.

A careful reading and consideration of the testimony make it clear that the charge that the will of the testatrix was the product of undue influence exercised over her by Mr. Harrison, is wholly without any substantial basis.

Much stress is put by counsel of appellant upon the circumstance that the will was prepared and drawn by Mr. Harrison's law partner, Mr. Alonzo Church, accompanied by the assertion that Mr. Harrison actively participated in drafting the document, and is the chief beneficiary thereunder, and, hence, counsel argues that in such a situation the law cast the burden upon Mr. Harrison to establish by conclusive evidence that he did not influence the testatrix in her testatmentary dispositions.

But no such case is here before us. Mr. Church testified that he drew the will at the request of Mrs. Bishop, a telephone message having been received at the office that he should call, and in response to the message he called upon Mrs. Bishop about ten days before the will was executed by her; that Mrs. Bishop told him how she desired to make her will, and that he took pencil notes, went back to his office, and from the notes taken the will was prepared; that two weeks later he took the draft of the will to the testatrix to read and she called his attention to several mistakes he had made as to names of beneficiaries, and asked that they be corrected, which was done, and annotations of such corrections were made upon the will; that she reread the will, which was executed in the presence of the witnesses, one of them being the family physician of the testatrix, who had been requested by Mr. Church to be present at the execution of the will; that he placed the will in the office safe.

The fact that there were annotations upon the draft of the will in the handwriting of Mr. Harrison suggestive of some slight changes were of no real significance, for it appeared from the draft of the will produced, on behalf of the caveatrix, that the name of Mr. Harrison did not appear as a beneficiary of the residue of the estate, the space for the insertion of the name of such beneficiary being left blank. Outside of the circumstances just detailed, there was not the slightest testimony tending to show active participation of Mr. Harrison in the drafting of the will of the testatrix.

The courts of this state have not gone to the extent to hold that one actively participating in the drawing of a will, and who is chief beneficiary thereunder, is presumptively chargeable with undue influence. Such a circumstance may or may not be a factor to establish *imposition* upon the testator, for that is what is meant by the charge of undue influence, and, hence, whether or not there was *imposition*, must be disclosed by other circumstances and conditions than the mere drafting of a will and being a beneficiary thereunder.

We have been unable, after a close scrutiny of the testimony and circumstances relating to the execution of the will, to find anything, which, even remotely, tends to establish *imposition* practiced upon the testatrix in making the disposition that she did make of her property.

It is argued, on behalf of appellant, that the reasons assigned by the vice-ordinary, in his opinion confirming the decree of the orphans court, are at variance with the well-settled law of this state. But be this as it may, we are only concerned whether the result reached by the court below was warranted by the evidence, under the application of correct legal principles. We think the result reached was a correct one.

The mere fact that Mr. Church and Mr. Harrison are gentlemen of good repute and of high standing at the bar and in the community, stamps no greater probative value on their testimony, in a court, than the testimony of the most humble individual, and the criticism of counsel of appellant that the vice-ordinary ignored this equality of witnesses, in speaking

of Mr. Harrison, by saying: "His excellent character and his well-earned reputation in the community and at the bar as an upright, honest citizen and lawyer, are sturdy vouchers that his testimony is truthful and believable" is hypercritical. Of course, this statement was wholly unnecessary, as Mr. Harrison's reputation as an honest citizen and lawyer was not in issue.

As has been already observed, we are not concerned with the reasons which induced the court to reach the conclusion that it did, so long as it appears that under the law and the evidence the result reached was warranted.

The decree of the prerogative court, affirming the decree of the orphans court, is affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, JJ. 13.

*For reversal*—None.