The conclusion of the orphans court that the testator was competent and free from undue influence in the making of his will, is the only logical one that could be reached. The decree will be affirmed.
The testator was a Catholic priest. He left an estate of less than $50,000. His last will and testament bears date October 5th, 1931. He died December 30th, 1931. He gave his library to his nephew and the rest of his estate to his housekeeper, at times his nurse. She, mother of a grown family, was in his service from 1927 until he died. From 1930 she made her home with him at the rectory; before that she lived at her own home. He was a victim of diabetes and its complications, from which he had suffered for years. Besides managing his household, she nursed him during prostrating spells of his ravaging disease, which of course grew progressively worse, interrupted by periods of improvement, usual with that disorder. Although his malady made terrific *Page 357 
inroads upon his strength, health permitting, he discharged his priestly functions to the last; at Christmas, five days before he died, he celebrated midnight mass and preached a short sermon. The will was executed shortly after his return from a four months' vacation at the seashore where he had gone for the summer, returning Sundays to officiate at the church. The witnesses to the will testified to his full appreciation of the ceremony. On the same day, or perhaps it was the next, he entertained a group of priests at a festive dinner in a perfectly normal and happy way. Energy naturally dwindled as his feebleness increased; he was always able to be around, but towards the end was hardly able to see. His mind, not as active as in his vigor, was firm. Sick, the commonplace no longer interested him, but stimulated by the thing in hand, he was alive to the situation. The testimony leaves no doubt of his capacity to dispose of his possessions by will.
There is no proof of attempt to influence the testator against his brothers and sisters, who lived nearby, with whom he was dissatisfied, and his aged mother and a sister living in Italy, to whom he had been sending approximately $600 a year for a long time. The following items, it is claimed, suggest undue influence: The testator transferred three hundred and thirty-three shares of preferred stock of the Public Service Corporation of New Jersey on the books of the company to the name of the housekeeper, March 12th, 1931, after having a year before transferred them to their joint names, but he retained the certificates and collected the dividends. The transfers of the shares were upon an understanding that the housekeeper should continue, after his death, sending $600 to his mother and sister as long as they live. Whether the transfer was a perfected legal gift is questionable. He opened a bank account in his name as trustee for the housekeeper, and he invested $4,000 in a house at the seashore, title to which was taken in the name of the housekeeper. He had nothing else except $2,000 in bank. There is nothing in evidence indicating that any of these items were solicited or wheedled out of the deceased by the housekeeper; nor does *Page 358 
it appear otherwise than that they were given volitionally, in grateful appreciation of her devoted services. There is grave doubt that these items would stand the test of gifts intervivos, but we are presently not concerned with that question. The items are offered as reflecting undue influence in the execution of the will. The proof, however, shows that the execution of the will was a beneficence of the deceased, distinct and unrelated to the gifts, in which the housekeeper had no part.
The will originated with the testator; it was his conception and formulated after mature deliberation. The probated will is the third of its kind, giving the estate to the housekeeper. In one previous to the three, he had given his estate to the church. In explaining to a Catholic priest, an intimate, his change of heart from the church to the housekeeper, he said he had given thoughtful consideration and that he was satisfied in conscience that the private charity was the more just. By the first of the three, November 11th, 1930, he gave to one of his sisters and to a brother $500 each (his other brothers and sisters were ignored), and the remainder to the housekeeper, with precatory words that she send monthly to his sister, during the lifetime of the mother and the sister, a stated sum. In the second, March 2d 1931, he gave $250 to each of his two brothers and three sisters, and the residuary estate to the housekeeper, and omitted the precatory words. In the third, probated, the pecuniary bequests to the brothers and sisters and the precatory words were omitted. The three wills, giving the estate to the housekeeper, were prepared by a reputable lawyer, to whose office the testator had gone and to whom he gave directions for the first. Five months thereafter he sent for the lawyer to make some changes. Not satisfied with the draft, it was destroyed and the second will prepared and executed. Seven months later, the lawyer was again sent for, received his instructions from the testator, and returned to the rectory where the probated will was executed in the presence of an assistant priest, a maid in the household and the lawyer. Each of the three wills, immediately upon execution, was delivered to the lawyer *Page 359 
for safekeeping. The proof is that the housekeeper had nothing whatever to do with their procurement, and she avers she never heard of them and did not know of the probated one until after the death of the testator.
Obviously, a relation of trust and confidence existed, but the testator dominated. Confidential relation, in the absence of mental enfeeblement of the testator and of participation by the confidant in the procurement of the will, does not raise a presumption of undue influence. Wheeler v. Whipple, 44 N.J. Eq. 141; affirmed, 45 N.J. Eq. 367.
The orphans court gave entirely too much latitude to counsel for the caveator. Witnesses were permitted to be called and recalled and the record overflows with repetition and irrelevancy, resulting in a transcript of nearly seven hundred pages. Disappointed relatives should not be permitted to thwart the testator's estate by eating it up in cost. In awarding costs the court will see to it that the expense of loading up the record is borne by the caveator. *Page 360