Loretta Tenenbaum died July 28th, 1933. Her will, dated February 22d 1933, was admitted to probate by the surrogate of Hudson county August 9th, 1933. It disposes of specific articles of personal property, makes several money bequests and gives the residue to the mother of the testatrix. The legatees are her mother, her three sisters, her brother-in-law, a niece and two friends; her husband is cut off from any share in her estate. He learned of the execution of the will four days after his wife's death and two months after probate he appealed therefrom to the orphans court. That court, after considering the appeal and the testimony taken thereon, by its decree dismissing the appeal adjudged that the appellant husband had reasonable grounds for contesting the validity of the will and allowed his proctor counsel fees of $2,500 and costs of $157.22 to be paid out of the estate and denied a motion on behalf of the executor that the husband pay the costs of the litigation. No appeal from the decree was taken on behalf of the husband, but the executor appealed from so much thereof as allowed him counsel fees and costs and denied the executor's motion to direct him topay the costs of appeal. *Page 406 
Examination of three hundred and eighty-four pages of testimony contained in the printed state of case, discloses that the husband claimed that his wife's entire estate came to her by gift from him; that they had been happily married fifteen years; that the beneficiaries under the will had kept its execution secret from him until a few days after his wife's death and that he could conceive of no reason why she should have executed a will depriving him of all interest in her estate. His counsel must have advised him that even if his wife had no fair reason for cutting him off as a beneficiary and had executed a will which was contrary to justice and unnatural and unfair, yet if it was her free and unconstrained act and she had testamentary capacity and had observed all legal formalities required in its execution, he could not hope to set it aside, In re Triebe, 114 N.J. Eq. 227,
and so the grounds of appeal in the court below were (1) lack of testamentary capacity; (2) undue influence exercised by her mother and three sisters; (3) the will not executed according to law.
The attesting witnesses were called on behalf of the executor and their direct examination and searching cross-examination established beyond doubt that the will was duly executed and that the testatrix had full testamentary capacity and the husband abandoned the first and third grounds of appeal and offered no testimony in support thereof; thus he had to rely solely on his charge of undue influence. He called as his witnesses the mother, the three sisters and the brother-in-law and examined them at great length. Their testimony established that a family relation of trust and confidence existed between the testatrix and those witnesses, but not a word of their testimony tended to show that any of them had sought to influence the testatrix to make a will. None, save Mrs. Jacks, a sister, was shown to have had any connection with its preparation or execution. Mrs. Jacks' testimony showed that the testatrix had dictated to her a memorandum for the will and had instructed her to take the memorandum to her (testatrix's) lawyer cousin and have him prepare the will. That lawyer drafted it from the memorandum *Page 407 
and did not discuss its provisions with anyone other than Mrs. Jacks. He took it to the home of the testatrix, talked with her alone in her room and handed her the will and the memorandum. She read the will and told the lawyer she approved it. He directed her attention to a clause therein which reads, "I do not make any provision in this will for my husband Nat Tenenbaum, because I have amply assisted him with funds within the past five years," and thereupon she told the lawyer her reason for that provision. The lawyer then called in a disinterested person to act as witness with him and while he, the other witness and testatrix were alone in her room she executed the will, after which the lawyer left with her the memorandum from which the will was drawn, took the will to his office and kept it there until she died five months later. Four other witnesses, who might be described as disinterested, were called on behalf of the husband but none gave testimony to show that any person had exercised influence of any sort to induce the testatrix to make a will, or had said or done anything to affect her relations with her husband. The husband was also a witness but nowhere in his testimony can I find anything to show that his wife's relatives attempted to influence her against him, or to influence or induce her to make a will. His testimony was mainly to show that all the estate she had came to her from him; that his marital relations were close and happy up to his wife's death and that he had not been informed that she had executed the will. There is testimony (not persuasive) that the wife's estate did not come wholly from her husband and there is strong evidence, beside the quoted clause of the will, to show that the later years of their married life had not been harmonious. As to not informing him of the existence of the will — the failure of his wife to inform him must have been for a reason which appeared sound to her and the proofs show that it was her wish that he be not told; therefore that such of the beneficiaries as knew of the execution of the will did not inform him of it does not, under the circumstances, bear on his claim of undue influence.
Counsel for the husband knew at the outset of the appeal *Page 408 
that the mere fact that a relation of trust and confidence existed between the testatrix and those near relatives who benefit by the will, would be insufficient to raise a presumption of undue influence and that he would be required to show some fact or circumstance from which it could be inferred that the mind of this testatrix was dominated by at least one of those beneficiaries and thus throw upon them the burden of proof that there was no imposition of their will on the mind of the testatrix (Wheeler v. Whipple, 44 N.J. Eq. 141; affirmed,45 N.J. Eq. 367; In re McLaughlin, 69 N.J. Eq. 479; Ward v.Harrison, 97 N.J. Eq. 309; Loveridge v. Brown, 98 N.J. Eq. 381; In re Castellano, 115 N.J. Eq. 356), yet no such proof was offered on behalf of the husband. Examination of the whole testimony shows that the husband entered upon the will contest without having had reasonable cause therefor; that at the most he had only doubt and suspicion as to the validity of the will, based solely upon what he claims were the intimate relations existing between his wife and himself at the date thereof. Such doubt and suspicion may be said to be sufficient to justify him in requiring that formal proof be made in open court of the due execution of the will, but after that proof has shown conclusively that the will had been executed with all the formalities required by law and that his wife had testamentary capacity, he was not justified in prolonging his contest when he had no affirmative proof of undue influence to offer. It is apparent that the husband had only hope that the examination of witnesses called on his behalf would elicit some evidence or circumstance to indicate undue influence and his futile attempt to translate his hope into fact covers two hundred and ninety-eight pages of testimony. After the orphans court had found that he had failed on all his grounds of appeal, its only authority for imposing his counsel fees and costs on the estate, was to find also that he had reasonable cause for the contest.Comp. Stat. p. 3885 § 197. But nowhere in the record can I find the slightest basis for such finding. Our courts have criticised frequently and sometimes severely, allowance by the orphans court of counsel fees and *Page 409 
costs to unsuccessful will contestants and I find no justification for making any such allowance in this case.Canfield v. Ball, 8 N.J. Eq. 582; Perrine v. Applegate,14 N.J. Eq. 531; Collins v. Townley, 21 N.J. Eq. 353; In reWintermute, 27 N.J. Eq. 447; affirmed, 28 N.J. Eq. 437; Mallett
v. Bamber, 33 N.J. Eq. 253; Higgins v. McQuirk, 61 N.J. Eq. 613; In re Sebring, 84 N.J. Eq. 453; In re Squier, 106 N.J. Eq. 267; In re Tobin, 114 N.J. Eq. 170. The decree of the orphans court in this respect should be reversed.
This appeal is also from the orphans court decree denying the executor's motion to charge the husband with costs of appeal in that court. Believing that the husband was justified in seeking formal proof of due execution of the will, costs for that part of the litigation should not be charged against him. While he prolonged the contest in his search for evidence or circumstances of undue influence, it is difficult to say at what point a charge against him for costs of that part of the litigation should begin and therefore the decree of the orphans court which, in effect, leaves it to each party to pay his own costs, should not be disturbed. Collins v. Townley, supra; In re Squier, supra.
Costs on this appeal will be allowed against the husband, but no counsel fee to either party. *Page 410