The Ordinary.
An instrument, purporting to be the last will and testament of Thomas Baird, of the county of Middlesex, having been offered for probate before the surrogate, a caveat was filed by the appellants, two of the next of kin of the testator. The instrument was thereupon propounded for probate before the Orphans Court, by the execu *533 tors named therein. On the 30th of August, 1861, the subscribing witnesses having boon examined, and further evidence produced by both parties, the will was admitted to probate, and letters testamentary ordered to be issued to the executors therein named; and by said decree it was further adjudged and decreed “that each party pay their own costs.”
From this decree the caveators appealed, alleging the same to be in every respect erroneous. The appellants having abandoned so much of the appeal as relates to the validity of the probate, the only point discussed upon the argument relates to the question of costs.
By the act of 1855, § 12 (Nix. Big. 562, § 60,) it is enacted, that if probate of the will be granted, the costs of both parties shall be paid by the persons contesting the validity of the will; provided that if they do not offer any evidence other than the subscribing witnesses to the will, they shall not be liable to pay the costs of the successful party.
By the act of February 1st, 1861, (Nix. Big. 592, § 86,) it was enacted, that if the persons contesting the will offer other evidence than the subscribing witnesses, the court, if it appear that the persons contesting the will “ had reasonable cause therefor,” may make such decree respecting the costs and expenses as could have been made previous to the act of 1855. The effect of the two acts upon the point in question is, that if the party contesting the will “ have no reasonable cause therefor,” he must pay the costs of both parties; if he have reasonable cause therefor, the question is left to be disposed of by the court, independent of the act of 1855. The contention on the part of the appellants is, that if in the opinion of the court the party contesting a will “ has reasonable cause therefor,” he is entitled as of course to costs out of the estate.
I apprehend, both upon principle and authority, that this is a mistake. The general rule is directly the other way.
In Dean v. Russell (3 Phill. 334), the court said: “ It is only under special circumstances that the court directs costs *534 to be paid out of the testator’s estate; indeed it is only in modern times that it has found itself authorized so to do. In this case the party might earlier have judged that he ought not to have proceeded so far in the cause.” In a note to this decision two recent cases are referred to where costs were allowed out of the estate, but the circumstances or the grounds of the allowance are not stated.
In Urquhart et al. v. Fricker, 3 Addams 56, the will was opposed by Ericker, one of the principal legatees under a former will. Seven witnesses were examined in support of the will, to each of whom Ericker addressed interrogatories, but it does not appear that he called a single witness. The will having been established, application was made, on behalf of Ericker, that costs might be paid out of the estate of the deceased. Sir John Uicholl, in pronouncing judgment refusing costs, said: “ The counsel of the executors have argued against costs being taken out of the estate, as if it were a rule in similar cases that costs should be taken out of the estate of the deceased, to which they were bound to make this particular case an exception. But the rule in such cases is, that costs are not to be taken out of the estate: so that the burthen of excepting this case from the operation of a general rule clearly rested with their opponents.”
The same principle applies where a party interested, other than an executor, offers a will or a codicil for probate which is not established. An executor, as a general rule, is allowed his. costs out of the estate, though the will be not established, because it is his duty to offer the will for probate; but if a will is offered for probate by a legatee, he will, if unsuccessful, be condemned in costs. In Crisp and Ryder v. Walpole, 2 Haggard 531, the two principal legatees, Orisp and Ryder, propounded and undertook to prove an instrument as a codicil to the testator’s will, but failed to establish the instrument. The. same learned judge, in pronouncing judgment, said: “ The court is not called upon to pronounce that this instrument is a fabrication. But whether fabrication or not, I must repeat that I fully acquit Mr. Ryder of any participa *535 tion in the transaction, and that I entertain no suspicion that he was concerned in or privy to the fabrication of the paper. If, however, parties will set up and undertake to establish such a case by proof for the chance of benefit to themselves, they must also be content to do it at their own risk of paying the costs in case of failure. I must, therefore, not only pronounce against the codicil, but feel bound to condemn the parties who have propounded it in costs.”
These decisions of Sir John Hicholl, a judge distinguished alike for learning, integrity, and a clear perception of the right, than whom no higher authority can be cited upon questions of ecclesiastical law, prove the general rule to be, that where the will is admitted to probate, costs are not to bo paid out of the estate of a testator to a party contesting the grant of probate.
On the other hand, it is an equally well settled general rule in the Prerogative Court, that the next of kin, or legatee under a former will, is entitled to public and full probate of a will by the subscribing witnesses. He will not, therefore, be condemned in costs for requiring such probate, if he merely interrogates the witnesses produced in support of it, unless his conduct be clearly vexatious. Keirdeside v. Harrison, 2 Phill. 449; Urquhart v. Fricker, 3 Addams 56; Green v. Proctor, 1 Haggard 337; Wagner v. Mears, 2 Haggard, 524; Stratton v. Ford, 2 Lee 216.
A somewhat similar rule prevails in Chancery upon bills filed to establish wills. Thus, on a bill filed by a devisee to perpetuate the testimony of the witnesses to a will, and the heir-at-law merely cross-examines the complainant’s witnesses who are produced to confirm the will, and calls no witnesses upon his part, he is entitled to his costs. Berney v. Eyre, 3 Atkyns 387; Vaughan v. Fitzgerald, 1 Scho. & Lef. 316; Blinkhorne v. Feast, 1 Dickins 153; Turner v. Turner, 1 Dickins 313.
So upon a bill filed to have the will proved or established, if the heir has an issue directed at law, and the will is established, if he merely cross-examines the plaintiff’s witnesses, *536 he shall have costs at law and in equity. Crew v. Joliff, Prec. in Chan. 93; Bidulph v. Bidulph, 3 P. Wms. 285 ; Luxton v. Stephens, 3 P. Wms. 373; White v. Wilson, 13 Vesey 87.
But if he sets up insanity in the testator or examines witnesses of his own he shall not have costs. Same cases and Webb v. Claverden, 2 Atkyns 424; Smith v. Dreamer, 3 Young & Jer. 278.
And if his proceedings are vexatious he shall pay costs to the adverse party. Scaife v. Scaife, 4 Russ. 309.
The general rule in regard to costs in the Prerogative Court, as the result of the authorities, may be stated thus
The executor propounding a will for probate, acting in good faith, is entitled to costs out of the estate whether probate be granted or refused.
When probate is granted, if the party contesting the validity of the will merely cross-examines the subscribing witnesses to the will, and other witnesses, if any on the part of the probate, he is not charged with costs. If he sets up insanity, or calls witnesses other than the subscribing witnesses to the will, he will be required, at the discretion of the court, to pay costs to the opposite party.
If probate be denied, the party contesting the validity of the will is entitled to costs out of the estate. This, however, it is obvious is not a question of costs between party and party, but a mere question of equity between the next of kin who caveats and those who share the benefit of the contest, without contributing to its success. If there be but one next of kin who caveats, to say that he shall have costs out of the estate is tantamount to saying he shall pay his own costs. Or if there be several next of kin, and only part of them contest the validity of the will, the allowance of costs to them out of the estate is a simple direction that they shall contribute to the payment of costs in proportion to their respective interests in the estate.
Previous to the act of 1855, a practice obtained in at least some of the counties of the state, in all litigated cases, of *537 charging the entire costs of contesting the validity of wills of both parties upon the estate. There is no legal justification for such practice. It affords an easy mode for a disappointed heir to thwart the intentions of the testator by squandering the estate in litigation, or compelling the legatees to accede to unreasonable terms of settlement. Instances are not wanting where entire estates have been swept away by protracted litigation. It is in fact a bounty upon litigation. I speak but the common sentiment of the profession in saying, that the practice was fraught with great evils, and operated most oppressively upon legatees. It was to correct these abuses that the legislature interfered, and by the act of 1855, attempted to restore the practice to its ancient and proper channel. The act was prepared by the law commissioners appointed under the joint resolution of March 3d, 1854. (Pamph. L. 544.) It was reported with the concurrence of all of the commissioners. (.Report of law commissioners, p. 28.) The provisions of the twelfth section of the act have manifestly been prepared with great care, and by a person familiar with the proper practice of the court, and the principles by which it is or should be controlled. The enactment is little else than a legislative recognition of the correct practice of the court. It differs only in this, viz. that what was before discretionary touching the point now at issue it made compulsory. It allowed the court no discretion, but made the rule compulsory, that in all cases where the will was admitted to probate, if the party contesting the will examined any witnesses other than the subscribing witnesses he should pay costs to the successful party. No matter what the circumstances of gross misconduct on the part of those procuring the will, or of strong doubt of the capacity of the testator, or the due execution of the instrument, the successful party recovered his costs precisely as he would have done if the heir-at-law had brought ejectment to recover the land, and thus sought to invalidate the will. The inconsistency which existed, of requiring the heir-at-law, in case he sought to establish his *538 title as heir, and contested the validity of the will in the courts of common law, to pay the entire costs of the controversy, and yet permitting him to go into the Orphans Court, and there to contest the will at the expense of the legatees, must have forced itself upon the attention of the legislature. It is difficult to conceive of a stronger legislative condemnation of the wrong thus done to party litigants than the law of 1855 affords. Thejr not only bring the practice back to its true principles, but they take away all discretion from the court, and thus prevent the possibility of abuse.
The operation of the act of 1861 is not to restore the erroneous practice, but simply to give to the court the discretion which it formerly exercised. It would be a matter of deep regret if it should be so construed as to give the least sanction or countenance to the practice of burthening estates with the entire costs of a controversy waged unsuccessfully against the validity of a will. It must be an extreme case that would justify a court in giving costs to an unsuccessful party in contesting a will.
Both parties complain of the decision of the court below in regard to costs. The appellants insist that they are entitled to costs out of the estate on the ground that there was reasonable cause for contesting the will. I am far from thinking that there was no reasonable ground for contesting this will. It appears that the testator was addicted to habits of intemperance; that at times he drank very hard, and was then incompetent to transact business; that for several days previous to the execution of the will he had been drinking to excess, and had been upon what the witnesses term a spree. It is shown that, on Sunday and Monday previous to the execution of the will, he was in a state of intoxication; that on Tuesday morning, the day on which the will was executed, he continued under the influence of liquor; that on the evening of that day and on Wednesday he was intoxicated, and that on Thursday, while in a state of intoxication, he was attacked with paralysis, which in a few days terminated in his death.
Nor did the caveators rest upon that ground alone. They *539 offered evidence tending to show the exercise of undue influence over the mind of the testator. The scrivener, moreover, by whom the will was drawn was not called as a witness before resting the case in behalf of the probate. He was, as appears by the evidence, a magistrate, a man of experience as a scrivener, well acquainted with the testator, and was present at the execution of the will. He was therefore better qualified to speak of his mental condition and capacity at the execution of the will than any other witness. It is true that the counsel of the executors were not required by the practice of the court to call him before resting the case in support of the probate. They were authorized to rely upon the subscribing witnesses alone. Still I think that, under the peculiar circumstances of this case, the withholding of that witness is a material circumstance upon the question of costs, as it relieves the caveators from all imputation of improper motives in calling witnesses to impugn the validity of the will. I certainly think that the caveators had reasonable ground for contesting the will. It is upon this ground that the court below must have acted in relieving the caveators from the payment of costs to the adverse party. If they had thought there was no reasonable ground for contesting the will, or had deemed the conduct of the caveators unreasonable and litigious, they would have condemned them in costs. The decree is right, and must be affirmed.
The appeal is from the entire decree, and alleges that every part thereof is erroneous. His right of appeal cannot be forfeited because the appellant, before or at the argument, waives his other grounds of appeal, and relies alone upon the matter of costs as a ground for reversal. It is unnecessary, therefore, to consider the question, whether an appeal will lie from an erroneous decree of the Orphans Court in regard to costs alone.
Inasmuch as the question of the operation of the statutes of 1855 and 1861 upon the question of costs, and the proper practice under them, was a new one, and proper to bo considered and settled in this court, the decree is affirmed without costs against the appellants.