This bill prays an injunction restraining the defendant from the alleged violation of a building covenant contained in his deed, which, so far as pertinent to this inquiry, reads as follows:
"That the party of the second part * * * will not erect any dwelling-house upon the above-described lot within thirty feet of Mountain View avenue; * * * and no stable to be within one hundred feet of said Mountain View avenue."
This matter is submitted on the pleadings, an agreed state of facts and briefs.
The defendant is erecting a three-car private garage on the restricted lot within thirty feet of Mountain View avenue. The sole question to be determined is whether or not the erection of this garage comes within the inhibition against stables. I have no difficulty in reaching the conclusion that it does not.
This covenant had its origin in a deed dated July 24th, 1911, although similar restrictions, of slightly different wording and more strongly opposed to the complainant's contention here, were imposed on other lots in the same tract as far back as 1897.
The contention of the complainants is that the word "stable," as used in this covenant, should be read "garage," because, counsel argues, the garage is the modern substitute for the stable; and from the language of the covenant it is apparent that the intention of the parties in its use was to prevent the erection of outbuildings on this lot within one hundred feet of Mountain View avenue, and that the intention should control in the interpretation and construction of the covenant.
In Polhemus v. DeLisle, 98 N.J. Eq. 256, I said that, "in construing statutes and determining the meaning *Page 290 
of ambiguous words or obscure language contained therein, inquiry is always made as to the intention of the legislature in adopting the act, and the object of the statute and the evil to be remedied, are always considered," and that the same rule was to be observed in construing the wording of a restrictive covenant. This language is now cited by the complainants as authority for their contention that the intention of the framers of the covenant should here control. While, "in construing a covenant entered into in pursuance of a general plan or scheme, the objects and purposes had in view by the original promoters are to be taken into considertion" (DeGray v. Monmouth Beach ClubHouse, 50 N.J. Eq. 329), this familiar rule is applied only where the language is obscure or ambiguous, and, where the language is unambiguous, clear and specific, no room is left either for interpretation or construction. Lynch v. CommercialCasualty Insurance Co., 93 N.J. Law 425.
It is also an established rule of construction that the words of a private grant, if equally susceptible of two meanings, shall be taken more strongly against him who uses them. Crane v.McMurtrie, 77 N.J. Eq. 545.
But, in my judgment, the meaning of the word "stable," as used in this covenant, is plain, and is susceptible of but one meaning. At the time this restriction was imposed automobiles were in common use and garages were a common adjunct to the private home. If the parties had intended that garages should be prohibited within the restricted area, no doubt the word "garage" would have been included in the covenant.
It has already been held in this court in a well-considered opinion that a public garage does not come within the prohibition against livery stables as contained in a restrictive covenant. Bourgeois v. Miller, 89 N.J. Eq. 285.
There Vice-Chancellor Backes said:
"The livery or sales stable may have been the commercial predecessor of the public garage, but the covenant against the one is not, therefore, to be extended by implication to the other." *Page 291 
It seems to me that as a public garage is a modern substitute for a livery stable, and as a private garage may be said to have taken the place of a private stable, it follows under the authority of that case that the word "stable," as used in the covenant here under consideration, cannot be read to spell "garage." A stable, strictly speaking, is, undoubtedly, different from a garage, although I am aware that the word "garage" has been defined by the Century Distionary "to be a stable for the storage of automobiles or other horseless vehicles." My judgment is that the word "stable" is here used in its strict sense, and that the restriction of location of a stable within one hundred feet from the street line was designed to prevent, to a degree, the annoyance of noise, odor and flies usually incident to a stable. The language of the covenant must, of course, be strictly construed as against the grantor and those claiming under him. But if there were any doubt in my mind as to the meaning of the word "stable" as here used, I should still be obliged to deny the relief prayed for, because "to doubt is to deny." Fortesque v.Carroll, 76 N.J. Eq. 583.
It is common knowledge that private garages are to-day often built as an integral part of a dwelling-house, and to give this covenant the construction here claimed for it might prevent the construction on the defendant's lot of a private garage connected with the dwelling; and this possibility may have been anticipated by the framer of the covenant, and may suggest a reason for not including the word "garage" in the language used.
While my attention has not been called to any New Jersey cases exactly in point, the exact question here presented has already been decided in at least one other jurisdiction. In RiverbankImprovement Co. v. Bancroft, 209 Mass. 217; 95 N.E. Rep. 216;34 L.R.A. (N.S.) 730, it was held that a restriction against the erection of a stable on the restricted lot was not violated by the erection thereon of a garage.
My conclusion is that the word "stable," as used in this covenant, does not include "garage," and I will therefore advise a decree dismissing the bill. *Page 292 
[EDITORS' NOTE: THIS PAGE IS BLANK.] *Page 293