**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2757-23

IN THE MATTER OF THE ESTATE
OF RAJENDRA KAPILA, deceased.

_____

Submitted May 8, 2025 – Decided May 19, 2025

Before Judges Mawla and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. CP-000370-21.

Vikrant Kapila and Gitanjali Kapila, appellants pro se.

Berkowitz, Lichtstein, Kuritsky, Giasullo & Gross, LLC, attorneys for respondents Dr. Deepti Saxena and Chandru Chandnani (Eric A. Carosia, on the brief).

PER CURIAM

Plaintiffs Vikrant and Gitanjali "Gita" Kapila appeal from March 15 and April 3, 2024 orders dismissing their claim of undue influence and denying their request for counsel fees, respectively, against their father Dr. Rajendra Kapila's

estate through its executor, Chandru Chandnani, and their stepmother, Deepti Saxena.[1] We affirm.

Throughout his professional life and until his death, Rajendra was employed as a physician. Plaintiffs are Rajendra's adult children from his prior marriage to Bina, which ended when Rajendra and Bina divorced in 2008. The couple had been separated for more than twenty years.

Rajendra married Saxena in India on February 14, 2009. Plaintiffs did not attend the wedding. Both were vocally opposed to the marriage because Rajendra began his relationship with Saxena while still married to Bina.

Prior to the marriage, Rajendra visited Gita and her children in the summers of 2006, 2007, and 2008. However, the visits ceased immediately after Rajendra married Saxena. Gita's relationship with Rajendra was reduced to a series of vitriolic emails over the span of several years.

On June 29, 2015, Gita emailed Rajendra, instructing him to "stay away from [her] children" and stating her daughter viewed him "as a creepy[,] scary ghost." On August 9, 2017, Gita wrote, "I have left you alone for [thirteen] years. I don't want anything to do with you. . . . You don't have a relationship

---

[1] As Vikrant, Gita, Rajendra, and plaintiffs' mother Bina Kapila share the same surname, we refer to them by their first names when necessary. We intend no disrespect.

with [your granddaughters] and no matter what you do, you never will. . . .  I

will never forgive this treachery.  This is forever."  The next day, she wrote the

following:

> I was talking to [Vikrant] on the phone[,] and I told him
> that I had had only one thought about you in the past
> [thirteen] years and it was this:
>
> The only way I attend you[r] funeral is if your ashes get
> thrown into the duck pond in South Orange.
>
> Isn't that funny?!!!!
>
> Omg, [Vikrant] and I laughed so hard together on the
> phone over that.

The same day, Gita sent another email, which read:

> Stories for the future after you are dead:
>
> . . . .
>
> Do you know I th[a]nk my lucky stars every day that I
> don't have to sit across from a table looking at both [of]
> your stupid faces?[2]  Omg, what f[***]ing torture that
> was!  But, I'm out!  I celebrate that every day!  All the
> ways in which you lied, you pretended, for what?
> Thinking that your children wouldn't see through it.
> The rot in your lives, the rot in your minds.
>
> . . . .
>
> I want you bot[h] . . . to go to your graves knowing that
> I hate you.

---

[2]  Gita was referring to Rajendra and Bina.

. . . .

> I will have it written for our generations to come that [Rajendra] was an adulterer . . . .
>
> That will be th[e] story that gets passed down through eternity.

On November 21, 2019, Gita drafted another email, which she sent to Rajendra's work email address, but addressed it to Saxena. She expressed amusement at the fact that since there was an age difference between Saxena and Rajendra, he would die soon, leaving her a widow for "[thirty] years" and she "will be forgotten." The email further stated plaintiffs were

> the inheritors of [the family] name. And, just because you don't know us, do not think for one second we do not lay claim to what is ours by birth and by blood. . . . You are [Rajendra's] sex maid. You cook, clean, do laundry[,] and spread your legs. . . . That's all you are and all you will ever be.

There were no attempts at contact between Gita and Rajendra, other than through email, until his death.

Similarly, Vikrant had not spoken with Rajendra since 2007. The limited communication he had was not indicative of a warm relationship. On February 8, 2009, Vikrant emailed his paternal aunt inquiring whether Rajendra was getting married. He could not ask Rajendra himself, as "[i]t seem[ed] rather

4

pathetic for a son to make a telephone call searching for his father in another country with the question 'are you getting married[?]'"  The only communication Vikrant and Rajendra had after 2007, was in 2019 and 2021.  In 2019, Vikrant emailed birthday wishes to Rajendra.  When Rajendra replied to the email and signed it "Deepti and Raj," Vikrant replied the email "signoff" was "quite painful and hurtful" and concluded his email with "[h]ave a good life."  Vikrant's 2021 communication was a letter he sent requesting money for his daughter's tuition.

In 2020, Rajendra decided to create an updated will.  After seeking advice from friends, he chose LegalZoom rather than retaining an attorney "to save on the cost."  Rajendra drafted three wills using LegalZoom on January 26, February 4, and 20, 2020.  He reviewed and initialed each page of the final will.  His review was also evidenced by a handwritten correction to a typographical error on the first page.  At Rajendra's request, two long-time family friends, Rajender and Swaran Pruthi witnessed his will.[3]

At the time of the will execution, Rajendra was employed as a professor of medicine specializing in infectious diseases at University Hospital in Newark. He commuted to work daily by driving himself and performed clinical and

---

[3] We use Swaran's first name because she shares a surname with Rajender.  No disrespect is intended.

rotational duties. The hospital described Rajendra's work as follows: "During rounds, he provided medical care to patients and educated/mentored fellows, residents, and medical students. He completed all medical records and billed third-party payors for medical visits. He provided didactic lectures to the fellows approximately [four] sessions per year and participated in [continuing medical education] lectures and conferences."

However, because Rajendra was over eighty years of age and suffered from diabetes, heart disease, and other ailments, he had a high risk of contracting and dying of COVID-19. Thus, once the pandemic began, he requested medical leave from the hospital on March 17, 2020. Rajendra continued to work remotely while on leave. He attended conferences, worked with colleagues, published scholarship, and continued mentoring his students. Rajendra also maintained an active social life.

In March 2021, Rajendra was vaccinated against COVID-19. Afterwards, he and Saxena traveled to India to visit family and sell property. During the visit, he contracted COVID-19 and ultimately passed away from related complications on April 28, 2021. When Rajendra's body was returned stateside, Vikrant hosted a memorial service but did not invite Saxena. Rajendra died testate.

6

On November 10, 2021, plaintiffs filed a verified complaint against Rajendra's estate and named Saxena. They alleged four counts, namely: undue influence; improper execution of Rajendra's will; a third-party beneficiary claim; and misrepresentation. The matter was tried over seven days. Plaintiffs, Chandnani, Saxena, Bina, Warren Kahn, Esq. (Rajendra's former attorney), and Swaran testified.

After plaintiffs rested their case, the Estate and Saxena moved for involuntary dismissal under Rule 4:37-2(b). On February 15, 2024, the trial judge dismissed the undue influence, improper execution, and misrepresentation counts. As regards the undue influence claim, which is challenged in this appeal, the judge noted "the main thrust of plaintiff[s'] case is that . . . Saxena isolated [Rajendra,] . . . from [plaintiffs] after the adulterous affair beginning before the divorce in 2008." Plaintiffs asserted Saxena influenced Rajendra to prepare a will without the advice of any attorney and that Saxena entered the information on LegalZoom and created a will, which disinherited them.

The trial judge recounted the evidence, including the emails, "quite a few of [which] were disturbing." The emails, which were mostly authored by Gita, "contained extremely strong language" and "were dripping with hate and venom toward [Rajendra, Saxena], and at times . . . Bina, and other family members."

7

Although plaintiffs "heavily pointed to" Rajendra's travel to India in March 2021 as an example of Saxena isolating him, the judge found it irrelevant to the undue influence claim because the travel "occurred well after the disputed will was executed."

Based on the totality of the evidence, the judge concluded "the record here firmly established . . . there was simply no relationship maintained between [Rajendra] and [plaintiffs, whom he] . . . disinherited."  The judge found "this was not suspicious because riffs were not unusual in this family.  At various times, there was no communication of any sort between at least one plaintiff and [Rajendra,] or possibly even . . . Gita and [Bina]."  Even before Rajendra remarried, when there was "limited communication . . . the children and their parents apparently shared very little detail about their lives and certainly not intimate details."  As an example, the judge cited that Gita was unaware her parents had divorced "or that [Bina] had purchased another home prior to the divorce."  She noted Rajendra did not invite Gita or Vikrant to his wedding.

The judge found plaintiffs did not meet their burden of proof to establish undue influence because although Rajendra and Saxena were married, Saxena did not exert mental or physical dominance over Rajendra to establish a confidential relationship showing an imbalance of power when the will was

8

made. The facts showed the will was drafted for both Rajendra and Saxena "at the same time." That Saxena "was the typist entering the information needed by the LegalZoom prompts was not out of the ordinary for their relationship. Indeed, it comports in many ways with the testimony of Bina . . . in the way that . . . she often undertook tasks for [Rajendra]." There was also "no valid evidence presented that would allow any . . . inference that the will was not executed in the presence of witnesses."

Instead, the judge found "the lack of a relationship for over a decade combined with the tenor of the actual limited interaction that did occur primarily through emails, either directly or indirectly, makes it hardly surprising or suspicious that [Rajendra] chose not to provide for plaintiffs in his last will." It did not alter the outcome that Vikrant "did not . . . participate in the vitriol in the way Gita did. . . . He let his feelings toward his father be know[n] . . . in the email where he told him to have a good life." Vikrant "made no effort to sustain a relationship and . . . testified numerous times . . . as if he were the party being wronged by his father's actions . . . without more than that simply being his belief." The judge concluded "the proofs [of a confidential relationship were] simply lacking . . . [a]nd all that was proved was the mere existence of a family relationship between [Rajendra] and [Saxena]."

9

On February 29, 2024, plaintiffs applied for counsel fees and costs. They voluntarily dismissed the remaining count of their complaint on March 20, 2024.

The trial judge denied plaintiffs' application for fees because they did not establish "reasonable cause to believe that undue influence had been exercised over [Rajendra] by . . . Saxena or anyone else at the time the will was signed, because they had no idea what their father or [Saxena] were doing. They had literally no contact or communication with them." Although plaintiffs had their doubts and suspicions about Rajendra and Saxena's relationship, "[p]rior to filing the complaint, they had no evidence [Rajendra] was subject to undue influence." The fact the will was completed on LegalZoom without the help of an attorney "did not carry much weight . . . particularly when some of the testimony of . . . plaintiff[s'] witnesses . . . supported the fact that it would not be unusual for . . . [Rajendra] to save a few dollars." The evidence showed Rajendra was frugal even though he "had a lot of money."

The judge found plaintiffs' lawsuit was not predicated on a valid will contest and "often felt like we were in a therapy session, because the reasons that were provided had much to do with the years[-]long, . . . pain and disappointment that the plaintiffs felt." Their "claim was as hollow as it had been at the beginning." The judge concluded it would be inequitable to award

10

plaintiffs counsel fees because plaintiffs had not established good cause to contest the will and doing so would deplete the estate "or compel[] the . . . legatees to [accede] to unreasonable terms of settlement."

I.

Plaintiffs argue their undue influence claim was improperly dismissed because the trial judge failed to accord them all reasonable inferences under the evidence presented. They challenge the finding there was no undue influence by pointing to the fact Saxena inputted the information into LegalZoom. The fact that the first will misspelled Gita's name, which Rajendra then corrected, shows Saxena was the drafter. Gita's name was again misspelled, but not corrected in the final will, which they allege is evidence Saxena drafted it without showing it to Rajendra.[4]

Plaintiffs assert the evidence shows there was a confidential relationship because Saxena served as both the scrivener of the will and its beneficiary. The will was sent to Saxena's email, which Rajendra did not have access to. There was no evidence presented to show Rajendra could revise his will without Saxena's help. Rajendra and Saxena contacted LegalZoom to inquire about the

---

[4] Gita's full name is Gitanjali Wedemeyer. In the various drafts it was stated as "Geeta Kapila," "Gitanjali Wedermeyer," and "Gitanjali Weidermeyer."

legal effect of naming plaintiffs in the will. Plaintiffs contend the reasonable inference from this evidence was that Rajendra did not draft the will.

According to plaintiffs, this conclusion is also supported by other evidence showing Saxena controlled Rajendra. They allege a reasonable inference the judge should have drawn from the email evidence was that Saxena drafted Rajendra's emails because they did not bear Rajendra's punctuation and writing style. Further evidence that Saxena was in control were emails insisting that Rajendra's family communicate with both Rajendra and Saxena. Despite this, plaintiffs assert the judge "made no inquiry as to the provenance of emails" and improperly accepted Saxena's testimony as truth, affording her the benefit of the inference.

Plaintiffs argue the judge's finding that there was little to no contact between, and knowledge of, the life circumstances of plaintiffs and Rajendra was erroneous. They claim Gita took her children to visit Rajendra in 2007 and 2008, and photos from the visits show he was a doting grandfather. Moreover, it was not dispositive that plaintiffs were unaware of Rajendra's wedding to Saxena because neither Chandnani nor Swaran were invited to his wedding despite being close with Rajendra.

Plaintiffs further assert the judge's finding that Gita had a strained relationship with Rajendra because she was unaware her parents were divorced was erroneous. They claim this evidenced the judge's lack of understanding of the family's ethnic culture. Moreover, the judge's finding ignored Bina's testimony that Rajendra "was not a very verbal person with the children." Plaintiffs claim the proper inference from the evidence presented was that Rajendra was a traditional, simple man, who loved his children.

Plaintiffs contend the judge also ignored the fact Saxena demonstrated little knowledge of Rajendra's medical conditions, despite being his wife. She did not consider Saxena's role in isolating Rajendra from them, including by traveling to India.

Plaintiffs argue the trial judge's findings that Gita's emails demonstrated her contempt for Rajendra misconstrued the evidence. They claim the tone of the emails was because Rajendra was acting against Gita's wishes by trying to facilitate a reconciliation between her and her ex-husband and had nothing to do with the father-daughter relationship.

Flowing from these arguments, plaintiffs also challenge the denial of counsel fees. They claim they established reasonable cause for a fee award.

II.

We review a decision on a motion for involuntary dismissal de novo applying the same standard that governs the trial courts. ADS Assocs. Grp., Inc. v. Oritani Sav. Bank, 219 N.J. 496, 511 (2014). Rule 4:37-2(b) provides that after a plaintiff has rested their case, the defendant may move to dismiss "on the ground that upon the facts and upon the law the plaintiff has shown no right to relief. . . . [S]uch motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor."

"If the court, 'accepting as true all the evidence which supports the position of the party defending against the motion and according [them] the benefit of all inferences which can reasonably and legitimately be deduced therefrom,' finds that 'reasonable minds could differ,' then 'the motion must be denied.'" ADS Assocs., 219 N.J. at 510-11 (quoting Verdicchio v. Ricca, 179 N.J. 1, 30 (2004)). "[T]he judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969). "Ordinarily, the dismissal motion should be denied if the plaintiff's case rests upon the credibility of a witness." Pressler & Verniero, Current N.J. Court Rules, cmt.

14

2.1 on R. 4:37-2 (citing Ferdinand v. Agric. Ins. Co. of Watertown, N.Y., 22 N.J. 482, 494 (1956)).

To establish the presumption of undue influence, a proponent must first prove the existence of a confidential relationship between the decedent and the beneficiary. Haynes v. First Nat'l Bank of N.J., 87 N.J. 163, 176 (1981). A confidential relationship exists where

> the relations between the . . . parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from over-mastering influence; or on the other from weakness, dependence or trust justifiably reposed, unfair advantage is rendered probable.
>
> [Pascale v. Pascale, 113 N.J. 20, 34 (1988) (quoting In re Fulper, 99 N.J. Eq. 288, 314 (1926)).]

"[T]he mere existence of family ties does not create . . . a confidential relationship . . . ." Vezzetti v. Shields, 22 N.J. Super. 397, 405 (App. Div. 1952).

Plaintiffs' argument the trial judge unreasonably afforded all inferences from the evidence as it pertained to their undue influence claim to defendants lacks merit. There simply was no evidence establishing Rajendra and Saxena dealt with one another on unequal terms. Plaintiffs did not show Saxena had superior knowledge than Rajendra or that he was dependent upon her to the

15

degree she had "over-mastering influence" on his estate planning designs. Pascale, 113 N.J. at 34 (quoting In re Fulper, 99 N.J. Eq. at 314). Indeed, affording plaintiffs every reasonable inference, neither the narrative that Rajendra was unduly controlled by his passions for Saxena nor that she controlled him through coercion, unilateral action, or calculation was supported by the evidence.

Our review of the record confirms the trial judge's findings, namely that Rajendra and Saxena were partners in a marriage. Each had independent careers in medicine. There was no evidence of a confidential relationship and only evidence showing plaintiffs lacked a meaningful relationship with their father and him planning his estate accordingly by not including his children in the will and instead naming his grandchildren as contingent beneficiaries. The trial judge correctly summed up this case when she stated "the disinheritance of a child is difficult to that child[, a]nd in search of an explanation, it's understandable that the . . . children may contend the act was a product of undue influence." However, "the lack of a relationship for over a decade combined with the tenor of the actual limited interaction . . . makes it hardly surprising or suspicious that [Rajendra] chose not to provide for plaintiffs."

We are convinced reasonable minds would not differ about these facts and conclusions. The trial judge correctly concluded plaintiffs did not present evidence of a confidential relationship or other proof of an undue relationship related to the drafting of Rajendra's will.

III.

Rule 4:42-9(a)(3) states:

> No fee for legal services shall be allowed in the taxed costs or otherwise, except[:]
>
> . . . .
>
>> In a probate action, if . . . probate is granted, and it shall appear that the contestant had reasonable cause for contesting the validity of the will . . . , the court may make an allowance to the proponent and the contestant, to be paid out of the estate.

A trial court's fee determination is accorded substantial deference and is disturbed only on the rarest of occasions where there is a clear abuse of discretion. Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 444 (2001); Rendine v. Pantzer, 141 N.J. 292, 317 (1995). An abuse of discretion in the award of counsel fees exists "if the discretionary act was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v.

Levine, 382 N.J. Super. 181, 193 (App. Div. 2005) (citing Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

However, whether an allowance is permissible under the court rules is a question of law subject to de novo review. Balsamides v. Protameen Chems., 160 N.J. 352, 372 (1999); Manalapan Realty, LP v. Twp. Comm., 140 N.J. 366, 378 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

The decision not to award plaintiffs counsel fees in this case was sound, and we discern neither an abuse of discretion nor a misapplication of law. Plaintiffs' evidence fell woefully short of showing a confidential relationship. The involuntary dismissal of their undue influence claim supported the judge's finding there was no reasonable cause to award counsel fees. The judge correctly concluded that doing the opposite would "afford[] an easy mode for a disappointed heir to thwart the intentions of the testator by squandering the estate in litigation." In re Sebring's Will, 84 N.J. Eq. 453, 455 (Prerog. Ct. 1915) (quoting Perrine v. Applegate, 14 N.J. Eq. 531, 537 (Prerog. Ct. 1862)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

18

A-2757-23