17 N.J. Super. 540 (1952)
86 A.2d 314
BENJAMIN CABINET, ET UX., PLAINTIFFS,
v.
RABBI MOSHEH SHAPIRO, ET ALS., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 23, 1952.
*542 Mr. Julius Waldman, for defendants Rabbi Mosheh Shapiro, Va'ad H'Kashress and Jacob Sicherman, for the motion.
Mr. Isaac C. Ginsburg, for defendant Joseph Spitalnick.
Mr. Edward S. Miller, for the plaintiffs, contra.
WOODS, J.S.C.
The attorneys for the defendants have moved to dismiss the complaint filed in this cause and for summary judgment in favor of the defendants who have been served with process in this cause, on the grounds that:
1. The allegations of said complaint are sham and frivolous.
2. The allegations of said complaint do not set forth a legal cause of action.
3. The court should not assume jurisdiction in that the questions involved are those of a religious nature and should be decided by the ecclesiastical court of that religion.
In the complaint the plaintiffs allege that they were the proprietors of a certain business conducted under the name of Ben's Poultry Market in the City of Atlantic City and were engaged in the selling of kosher poultry, that is, in the selling of poultry which was in every respect prepared, slaughtered and dressed in conformity with the requirements *543 of Hebrew law and which was in every respect pure, clean and wholesome and fit for human consumption, and that they advertised this fact by displaying the word "Kosher" on the front of their store. They further assert that most of their customers were members of the Hebrew religion, and as such were persons who complied with and obeyed the aforesaid requirements of Hebrew law, and who would not consume or purchase poultry or other food which was "treifa" or which was not, in every respect "kosher." The plaintiffs further allege that on June 27, 1951, the defendants, jointly and severally prepared and distributed or caused to be prepared and distributed in and about the City of Atlantic City and on and about the premises of the plaintiffs certain handbills or circulars, printed in Hebrew and English, which said handbills or circulars read as follows:
 "BE CAUTIOUS . . .
 KEEP YOUR HOME KOSHER
 THE CHICKENS SOLD AT
 BEN'S POULTRY MARKET
 Atlantic and Congress Aves.
 ARE TREIFA
 -----------------------------------
 Your Carefulness Will Guard Your
 Home From Treifas and Neveiles.
 Buy Your Meats and Poultry From
 Reliable Kosher Butcher Stores Who
 Display Kashress Signs
 VAAD HAKASHRESS OF
 ATLANTIC CITY
 and
 RABBI MOSHEH SHAPIRO"
The plaintiffs assert that these handbills were displayed in front of their store and were given to passers-by and to prospective customers of the plaintiffs, and were displayed in the retail stores of the individual defendants who are butchers and poultrymen. They claim that by virtue of the aforesaid acts and conduct of the defendants they have been greatly injured in their good name, character and reputation and brought into public scandal, infamy and disgrace, and *544 have become liable to be prosecuted for the alleged violation of R.S. 2:131-5 and 2:131-6, and that the customers formerly adhering to them have refrained from dealing with them, so that their business has been adversely affected. The plaintiffs contend that the aforesaid acts of the defendants were done willfully, deliberately and with malice aforethought and further that said defendants did unlawfully, willfully and maliciously conspire to prevent the plaintiffs from having the poultry sold by them slaughtered, prepared and dressed in such manner as to make the said poultry kosher.
It is contended that the defendant, Rabbi Mosheh Shapiro, is the chief orthodox rabbi of the City of Atlantic City and its environs. The Vaad Hakashress is an association incorporated under an act of the State of New Jersey, "An act to incorporate associations not for pecuniary profit," and the purpose for which it was formed on May 16, 1922, is as follows: "To enforce and perpetuate the orthodox Hebrew religious requirements commonly designated as the Hebrew kosher laws pertaining to the preparation, killing and keeping of meats, poultry and fowl." This association engages the services of a full-time inspector whose duty it is to make daily inspection of all the butcher shops engaged in the kosher trade. The rabbinic authority of the association is Rabbi Mosheh Shapiro and all questions pertaining to kashress are within his jurisdiction. On November 19, 1935, an ordinance was adopted by the entire Jewish community of Atlantic City providing that fowl slaughtered for consumption by the orthodox Jewish community should be slaughtered in Atlantic City and that all kosher-killed fowl must bear an identification tab (plumba). On that day an ecclesiastical court composed of three rabbis from New York, Philadelphia and Camden sanctioned the aforesaid ordinance and declared "that this ordinance to tag every fowl with a tag bearing the official signature of the Vaad Ha'Kashress, and the aforesaid city rabbi [Rabbi Mosheh Shapiro] has the force and effect of a religious law. Every fowl that does not bear this tab is prohibited as treif and Neveilla." Thereafter, *545 on July 7, 1936, an ecclesiastical court was convened by the Agudas Ha'Rabbonim of United States and Canada, which is recognized by orthodox Jewry as the highest rabbinic authority in America. The following is an excerpt from the decision of this ecclesiastical court:
"We recognize the validity of the ordinance prohibiting the importation of fowl slaughtered outside of the city of Atlantic City, adopted by the Vaad Ha'Kashress representing the Jewish community of Atlantic City through delegated members of all synagogues. We recognize that this ordinance will strengthen the observance of kashress since we know that many kashress violations are caused by this importation to Atlantic City. We therefore declare that fowl slaughtered in Pleasantville or other cities and brought to Atlantic City is as prohibited as is `absolute treifa and neveilla.' Anyone who makes available such fowl to Jewish residents of Atlantic City or guests in hotels and restaurants is considered as `feeding treifa to Israelites.'"
It would appear from the affidavits of the plaintiffs that they engaged the services of a duly ordained shochet to kill their poultry, but that said shochet was not one whose qualifications were approved by Rabbi Mosheh Shapiro, and one who was not under his direct supervision as provided by the ordinance adopted by the Jewish community of Atlantic City. Thus, on June 27, 1951, a proclamation was made by the Vaad Hakashress and Rabbi Mosheh, proclaiming that "the chickens sold at Ben's Poultry Market are treifa and Neveile."
The complaint is filed in an action for libel. The plaintiffs claim that this court has jurisdiction as both civil and property rights are involved, and assert that there is in existence no body of general jurisdiction in Judaism which can either appoint such a court or settle matters of ecclesiastical nature. On the other hand, the defendants claim that our civil courts should not take jurisdiction to inquire into the propriety of a judgment, conclusion, finding, mandate or issue delivered by an ecclesiastical court and the enforcement thereof by the appropriate authority under Hebrew law. The court has no quarrel with the statement in 45 *546 Am. Jur. 752, sec. 41 that the decisions of church tribunals as to questions of discipline, faith, or ecclesiastical rules, customs or law affecting the members of the church must be accepted by legal tribunals as final and binding upon them in their application to a case before them, nor will we inquire into or concern ourselves directly or indirectly, with conflicting contentions relating to the practice or the administration of the doctrinal affairs of religious groups, or the merits of or grounds for the imposition of discipline for claimed violations of duties owing to a religious group. In the case of S.S. & B. Live Poultry Corp. v. Kashruth Association of Greater New York, 158 Misc. 358, 285 N.Y.S. 879 (Sup. Ct. 1936), which was an action by the plaintiff for rescission of contract and for an injunction with incidental damages, and an attempt to have the issur declared void, the court said: "Unless flagrant and obvious violation of Jewish Law is shown, this Supreme Court will not go behind it." And, quoting from the case of Connitt v. Reformed Protestant Dutch Church of New Prospect, 54 N.Y. 551, 560, continued: "In all cases of doubt, when there is not clearly an absence of jurisdiction, the decisions of church judicatories as to their own jurisdiction in ecclesiastical matters should receive great weight." But, as was held in the case of Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244 (1879),
"the laws are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may with practices. * * * Can a man excuse his practices to the contrary because of his religious belief? To permit this would be to make the professed doctrines of religious belief superior to the law of the land and in effect permit every citizen to become a law unto himself. Government could exist in name only under such circumstances."
We feel that the principles involved in the complaint filed in this cause are not of a purely ecclesiastical nature. The civil and property rights of the plaintiffs are involved. The issur on which the defendants rely as a defense for their *547 proclamation applies only to animals slaughtered within the City of Atlantic City. There is no allegation that the poultry of the plaintiffs did not meet all kosher requirements except that it was not killed under the supervision of Rabbi Mosheh Shapiro and did not bear the seal or plumba of the Vaad Ha'Kashress of Atlantic City. This court does not claim, nor does it have the right, authority or jurisdiction, to declare or to find what is kosher and what is non-kosher, but certainly poultry slaughtered and prepared according to the traditional Hebrew ritual, if kosher in one place of the world, must be kosher in each hamlet and community. We do have the right and the jurisdiction to determine a matter in violation of civil and property rights of a citizen even though such rights involve the fundamental concepts and dogma of the Hebrew religion and law. We concur with the holding of the court in the case of Cohen v. Eisenberg, 173 Misc. 1089, 19 N.Y.2d 678 (Sup. Ct. 1940), that is:
"This Court is unwilling to hold that poultry which would otherwise meet every requirement to make it kosher  requirements that have been established for centuries  and which would be kosher if slaughtered and prepared in any place in the world except the city of New York [Atlantic City], would become non-kosher solely because it was slaughtered and prepared in an establishment not maintained under the auspices of an incorporated organization by no means universally accepted as an arbiter by those of the Jewish faith."
From a reading of the pleadings in this case and the affidavits submitted in the proceedings, it appears that this is one for the application of the rule "that courts are not prone to grant a motion to strike out pleadings unless it is evident that no factual issue has been raised by the pleadings, or there is no legal dispute. As a consequence, the power to strike out a pleading is to be exercised with the greatest care." Louis A. Cross Co. v. Margolis, 136 N.J.L. 453, 56 A.2d 759 (Sup. Ct. 1948). In Epstein v. Brook, 23 N.J. Misc. 267, 43 A.2d 782 (Sup. Ct. 1947), at page 784, the court stated as follows: "It has repeatedly been stated that *548 the court will not try the case on affidavits." It is only where the matters set up in the affidavits submitted on the part of the moving party are not controverted, and demonstrate that the complaint is sham, and is without factual support, that the court is justified in granting the motion.
"To succeed on an application for a summary judgment, it must appear palpably that there is no genuine issue as to any material fact challenged." Waltzinger, Civil Practice, p. 893. "A summary judgment should only be granted if it is obvious that there is no genuine issue and that, as a matter of law, the moving party should have judgment." Rule 3:56-3; Geiger v. Metz, 11 N.J. Super. 134 (Law Div. 1950), at p. 140.
Motion denied.