IN THE MATTER OF EDWARD GARY REISDORF,
AN ATTORNEY-AT-LAW.

Argued January 9, 1979—Decided June 19, 1979.

*Mr. Dickinson R. Debevoise,* Chairman, argued the cause for the Disciplinary Review Board (*Mr. Richard J. Englehardt,* on the brief).

*Mr. Alfred C. Clapp* argued the cause for respondent (*Messrs. Clapp* and *Eisenberg,* attorneys).

The opinion of the court was delivered by

HANDLER, J. These disciplinary proceedings had their inception in a fee complaint brought by one Janet Tell against a Newark law firm before the Somerset County Ethics Committee. That Committee contacted the Union County Ethics Committee which in turn issued a statement of charges in lieu of complaint against respondent, Edward Gary Reisdorf, and his law partner, Robert H. Jaffe. These charges were based upon a complaint that the law firm had earlier brought against Reisdorf in a probate litigation seeking, *inter alia,* to have him removed as executor of the estate of Philip Tell, Janet's deceased husband, and to set aside a contingent fee contract which

Reisdorf had entered into with Janet Tell for legal services anticipated in a contest over the Tell will.

The Union County Ethics Committee held disciplinary hearings on the charges. It found by clear and convincing evidence that Reisdorf committed ethical infractions. Respondent sought review of this determination before the Disciplinary Review Board, which found that respondent had violated disciplinary rules, DR 1–102(A)(4) (dishonesty, fraud, deceit, or misrepresentation), DR 1–102(A)(5) (prejudice to administration of justice) and DR 2–106(D) (excessive, overreaching fee). The Board recommended that Reisdorf be suspended from the practice of law for one year and be required to reimburse the Administrative Office of the Courts for the actual costs of disbursements for stenographic transcripts.

We are satisfied from our review of the record and the determinations of both the County Ethics Committee and the Disciplinary Review Board that the following facts were established by clear and convincing evidence. Philip Tell died on August 5, 1973. His will, which had been drawn by respondent and executed by decedent on January 4, 1973, described Janet Tell as his wife, although Janet and Philip, who were then living together, did not marry until April 1973. The will also named Janet as the sole beneficiary and Reisdorf as the executor. When respondent sought to probate the will on August 15, 1973, it was learned that on August 9, 1973, Mr. Tell's children by his first marriage (his marriage to Janet was his third) had filed a caveat, charging incapacity and undue influence. On August 31, 1973, the original return date of an order to show cause with respect to the caveat, another attorney was appointed administrator *pendente lite* pending the outcome of the will contest proceedings.

Mrs. Tell found herself in particularly difficult circumstances. The challenge to the will on grounds of undue influence and incompetence was based in part upon Janet Tell's marriage to decedent shortly after the execution of the

will, his death soon thereafter, and the fact that his natural children from his first marriage had been disinherited although they had been provided for in previous wills of the decedent even after he had married a second time. Janet's status as a beneficiary under the final will was further weakened by the questionable validity of the Mexican divorce Tell had obtained from his second wife. Also, serious charges had been made anonymously to the Union County Prosecutor's Office intimating that Janet Tell had murdered her husband, and, as a result, she had become the subject of an intensive investigation. Further, she was a British national and her right to remain in the United States after Mr. Tell's death was in jeopardy. In addition, she was without ready funds. The trustees of the Tell company pension fund in which she had an interest refused to make any payments to her because of the questions raised by the series of charges involving her and the will.

Respondent and his law firm undertook to represent her in connection with these various problems and to furnish legal representation in the defense of Mr. Tell's will. On September 10, 1973 Mrs. Tell entered into a contingent fee agreement which provided that the firm would represent her with respect to all claims involving the estate of her late husband. In return Mrs. Tell agreed to pay respondent 15% of the net amount received by her if the will contest were settled prior to a full pretrial and 20% of the net amount received if the contest were concluded after a full pretrial. In agreeing to this arrangement with Reisdorf, Mrs. Tell was led to believe by him that she had but two alternatives: (1) to pay legal fees in cash on an hourly basis whether the case was won or lost, or (2) to pay a legal fee only upon the contingency of the case being won. This choice, as presented to Mrs. Tell, was illusory. Respondent acknowledged that, in view of Mrs. Tell's grave circumstances, "[t]here was really no way that she could retain us on an hourly basis because she said she didn't have any cash."

The choice presented by respondent was false as well as illusory. At the time Reisdorf negotiated the contingent fee contract, he was apparently unaware of the provisions of the rules of court and statutes, $R$. 4:42–9(a)(3) and $N. J. S. A.$ 3A:3–24, that afforded other potential avenues for reimbursement of legal and related expenses. Reisdorf, however, soon learned of these other possibilities for payment. Indeed, almost immediately upon entering into the contingent fee agreement with his client, he applied to the court for an initial allowance out of the corpus of the estate for the widow, Mrs. Tell, and for legal fees. The court granted the application on September 21, 1973, only a week and a half after he had concluded the contingent fee contract with Mrs. Tell; Reisdorf was awarded an attorney's fee of $10,000 and Mrs. Tell, a widow's allowance of $2,000. Despite this, Reisdorf never specifically apprised his client of other modes for the payment of legal fees. Moreover, he became aware of the opinion of others, his adversary in the will contest and a New York attorney whom Mrs. Tell had consulted, that the contingency fee arrangement was unconscionable and unethical, but he failed and refused to reopen the fee discussions with his client and continued to insist that the contract was reasonable and binding. Rounding out the factual picture, it appears that shortly after the fee arrangements and his successful application for interim allowances, on October 1, 1973, respondent procured an exceptionally favorable settlement for his client that was astonishing both for the speed with which it was obtained and the small amount, $100,000, Janet Tell had to give up in return for the caveators' withdrawal from the will contest. The settlement left Mrs. Tell as the sole beneficiary, respondent as the executor and his firm as attorneys for the estate.

Thereafter, respondent and Mrs. Tell reached an impasse over fees. Mrs. Tell dismissed Reisdorf and his firm as her personal attorneys and hired the Newark law firm. Eventually, a fee settlement was reached between that firm and Reisdorf

and Jaffe, but only after the Newark law firm had brought the complaint which was to provide the foundation for the present disciplinary proceedings.

I

A pivotal question in assessing the ethical implications of respondent's conduct is whether it was likely he would receive payment for his legal fees without resort to and continued insistence upon the contingency fee arrangement he obtained from his client in connection with the will contest. The Ethics Committee emphasized that respondent had:

insisted upon enforcement of the contingent fee contract * * * in spite of the fact that he * * * sought and received monies from the estate to pay for his fees in the will contest.

Similarly, the Disciplinary Review Board took the position that Reisdorf, as the executor of the estate, was clearly entitled to attorney fees. That being so, the Board concluded it was totally unreasonable for Reisdorf to have pursued compensation on a contingency basis. As it correctly noted, the law is well settled that an executor, acting in good faith to propound a will, is entitled, win or lose, to reimbursement out of the estate for attorney fees on the theory that, in offering the will for probate, he is but fulfilling his duty as an executor. See, *e. g., In re Peppler,* 134 *N. J. Eq.* 160, 161 (E. & A. 1943) ; *Perrine v. Applegate,* 14 *N. J. Eq.* 531, 534 (Prerog. 1862) ; *Boylan v. Meeker,* 15 *N. J. Eq.* 310, 358 (Prerog. 1854) ; *In re Nixon's Estate,* 21 *N. J. Misc.* 333, 335, 32 *A.* 2d 359 (Orph. 1943), rev'd on other grounds, 135 *N. J. Eq.* 117 (Prerog. 1944) ; 7 *N. J. Practice (Clapp, Wills and Administration),* § 1548, pp. 271–272 (1962).

The sureness of this result is clouded somewhat by the circumstance that Reisdorf had been removed as executor and replaced by an administrator *pendente lite* prior to making the contingent fee contract. The Disciplinary Review Board

recognized, however, that aside from Reisdorf's status as a temporarily displaced executor, he still had a legitimate stake in the will contest to act as a proponent of the will together with the named beneficiary, Mrs. Tell. The Board concluded that payment for legal services as a proponent was available under R. 4:42–9(a)(3) which then provided:

In a probate action, if probate is refused, the court in its discretion may make an allowance to be paid by the proponent of the will or codicil, or out of the estate of the decedent. If probate is granted, the court may make an allowance to be paid by the contestant, but if it shall appear that the contestant had reasonable cause for contesting the validity of the will or codicil, the court may make an allowance to both the proponent and the contestant, to be paid out of the estate.

In addition to this source of payment for legal fees the Disciplinary Review Board believed that *N. J. S. A.* 3A:3–24 was also available to respondent. That statute provides:

The Superior or County Court wherein a contest is pending over the probate of any paper purporting to be a will may, on application by the widow or widower of the decedent, by any of the decedent's children, or by any children of any of the decedent's deceased children, order the person having the custody of the decedent's estate to pay out of the income of the estate, pending the contest, such allowance for the support and maintenance of such widow, widower, child or children as the court may deem just; and such further allowance out of the income, or, if need be, out of the corpus, of such estate as may be necessary to meet the expenses incurred or to be incurred in conducting the contest.

To entitle a widow or widower to the benefit of this section the applicant must have been ceremonially married to the decedent and been living with him or her as his or her spouse at decedent's death.

Respondent contends that under the unusual circumstances of the probate proceedings and will contest, he never had any solid assurance that he would be able to obtain fees for his legal services and was therefore justified in seeking fees on a contingency basis. He takes the stance initially advanced in *Perrine v. Applegate, supra,* 14 *N. J. Eq.* at 538 that "[i]t must be an extreme case that would justify a

court in giving costs to an unsuccessful party in contesting a will"; see also *In re Tenenbaum,* 118 *N. J. Eq.* 405, 408–409 (Prerog. 1935), aff'd o. b. 119 *N. J. Eq.* 488 (E. & A. 1936); *In re Squier,* 106 *N. J. Eq.* 267, 273 (Prerog.), aff'd o. b. (E. & A. 1930); *In re Story,* 101 *N. J. Eq.* 716, 721 (Prerog. 1927); *In re Sebring's Will,* 84 *N. J. Eq.* 453, 454–455 (Prerog. 1915); *In re Wintermute's Will,* 27 *N. J. Eq.* 447, 458 (Prerog. 1876), aff'd 28 *N. J. Eq.* 437 (E. & A. 1877). In this same vein, it is also stated that in light of respondent's removal as the executor pending the litigation, a proponent who is not also the executor, if unsuccessful, "will not usually be entitled to have his costs and counsel fees paid out of the estate", 7 *N. J. Practice, supra,* § 1548 at 272. See *Skillman v. Lanehart,* 73 *N. J. Eq.* 351, 353 (Prerog. 1907); also, *Greene v. Raynolds,* 133 *N. J. Eq.* 342, 343 (E. & A. 1943) (*dictum*); *Perrine v. Applegate, supra,* (*dictum*).

Our courts currently hold to a more balanced view of the comparative entitlement to legal fees by the opposing parties in a will contest. Except in a weak or meretricious case, courts will normally allow counsel fees to both proponent and contestant in a will dispute. 7 *N. J. Practice, supra,* § 1548 at 274. In *In re Caruso,* 18 *N. J.* 26 (1955), this Court upheld the trial judge's award of fees out of the estate to both sides in the will contest. Although acknowledging the importance of discouraging nuisance suits which might drain an estate and defeat the testator's intent, emphasized in *Perrine v. Applegate, supra,* this Court observed at 18 *N. J.* at 35, that:

* * * the principle is to be given a realistic operation to serve the two-fold purpose of discouraging speculative, wasteful and vexatious litigation, yet not thwarting judicial inquiry as to the legal integrity of the offered testamentary disposition, where there is reasonable warrant for that course in the particular facts and circumstances, by the apprehension of an *in invitum* assessment of the economic burden of the contest should the contestant in the end be unsuccessful.

See *In re Blake's Will,* 37 *N. J. Super.* 70, 78 (App. Div. 1955), rev'd on other grounds, 21 *N. J.* 50 (1956) (allowing costs to unsuccessful contestant) ; *cf. In re Lattouf's Will,* 87 *N. J. Super.* 137, 145 (App. Div. 1965) (increasing amount of attorney fees awarded out of estate to both sides) ; *In re Squier, supra,* 106 *N. J. Eq.* at 274 (decreasing loser's counsel fee but not revoking it entirely). But see *Stroming v. Stroming,* 12 *N. J. Super.* 217, 227 (App. Div.), certif. den. 8 *N. J.* 319 (1951). While the awards in *In re Caruso* were made to a successful proponent as well as the losing contestant the reasoning of the Court would be applicable to an unsuccessful proponent whose claims were reasonably based and brought in good faith. *Cf. In re Loori,* 20 *N. J. Misc.* 376, 387, 28 *A.* 2d 281 *(Prerog.* 1941), aff'd 132 *N. J. Eq.* 316 (E. & A. 1942) (noting that the proponent who had lost at trial level was nonetheless awarded attorney fees by the trial judge). Another indication of the recent liberal attitude toward will contests is the 1975 amendment to *R.* 4:42-9(a)(3), which totally eliminated those portions of the rule that provided for the assessment of costs against the losing party, thus making the estate the exclusive source of counsel fees.

██ Respondent is correct in noting that the allowance of counsel fees in a will contest under *R.* 4:42-9(a)(3), is discretionary and, in that sense, there was no absolute assurance that such an allowance would be forthcoming. Nevertheless, he had successfully invoked the court's discretion by seeking an interim allowance and, in view of the generous award made to him and his client, it was totally unrealistic for him to assume that he would be denied favorable consideration of his claims for legal services as the proponent of the will. Moreover, respondent has not demonstrated that he could not have obtained an award under *N. J. S. A.* 3A:3-24. Although existing precedent is limited, the cases suggest that counsel fees will be granted where a widow is needy and has reasonable grounds for the contest. *Cf. In re Braunstein,* 115 *N. J. Eq.* 556, 558 (Prerog.), aff'd o. b. (E. & A. 1934) ;

compare, *In re Phillips,* 138 *N. J. Eq.* 96 (Prerog. 1946), aff'd 139 *N. J. Eq.* 557 (E. & A. 1947).

Both disciplinary bodies emphasized the fraudulent nature of respondent's conduct in entering into the contingent fee contract without informing his client of her option of obtaining attorney fees out of the estate, as well as in continuing to insist thereafter on the contract's enforcement. It seems abundantly clear from the record that Janet Tell entered into the agreement without a full picture of her rights. Respondent's initial nondisclosure was exacerbated by his failure to reeducate his client after he himself learned of the availability of these alternate forms of compensation. The Ethics Committee concluded that the record:

clearly show[ed] intentional deceit, dishonesty and misrepresentation in an effort to obtain an excessive fee in lieu of a readily obtainable reasonable fee.

The Disciplinary Review Board found that:

on the basis of [Reisdorf's] * * * inaccurate and incomplete recital of the law to Mrs. Tell, she entered into an oppressive and completely unnecessary contingent fee agreement, that respondent relentlessly insisted on enforcing * * * until forced by litigation against him to forego the improper remuneration * * *.

We are satisfied, as were the tribunals below, that respondent committed a serious ethical breach in failing to make full disclosure of all relevant, operative facts to his client in entering into and maintaining the contingency fee contract. These material misrepresentations were knowingly and intentionally undertaken by respondent, who wilfully failed to clarify his client's legal status with respect to her entitlement to attorney's fees and related expenses. His conduct was fraudulent in nature and his professional shortcomings, in this respect, violated DR 1–102(A)(4).

## II

The tribunals below also found unethical conduct on the part of respondent in his insistence upon enforcing the contingent fee agreement, notwithstanding his client entered into the arrangement without full knowledge of all the material facts. Respondent is offered no escape from the conclusion that his conduct as thus portrayed was clearly unethical. It is not particularly relevant that a contingent fee in a probate proceeding may not be invalid *per se*. *Schomp v. Schenck*, 40 *N. J. L.* 195 (Sup. Ct. 1878). Nor is the issue in this case especially influenced by the fact that a contingency fee arrangement, at least in other, nonprobate areas, would warrant disciplinary action only in exceptional circumstances. *In re Quinn*, 25 *N. J.* 284 (1957) ; *cf. In re Loring*, 62 *N. J.* 336 (1973). '

▮ It is instructive to point out that the element of uncertainty of recovery is often important in determining whether a contingent fee as ultimately charged is reasonable or excessive. DR 2–106(A)(8) (whether a fee is unreasonable depends *inter alia* on "whether the fee is fixed or contingent"). In this case, however, the risk to respondent that he would obtain no payment at all if he lost the will contest was relatively small. Thus, his quest for a fee on a contingent basis is subject to serious challenge. If the risk of nonpayment to a lawyer is small or nonexistent, resort to a contingent arrangement with its potential for a much larger fee, can be unfair and inequitable to the client. Hence the propriety of arranging for the payment of fees upon a contingency is subject to strict judicial scrutiny. In *Hughes v. Eisner*, 14 *N. J. Super.* 58, 64–65 (App. Div.), appeal dismissed, 8 *N. J.* 228 (1951), the court recognized this in a civil case, stating:

[A] court of equity may inquire into the fairness and reasonableness of a contract entered into by attorney and client, and may, if the facts warrant, revise or cancel such a contract. * * * This authority of the court grows from the confidential relation between the

parties and also from the fact that an attorney-at-law is a high officer of the court, entrusted with unique powers and subjected to a peculiar standard of conduct.

Compare *Obertelli v. Freeman,* 142 *N. J. Eq.* 235 (E. & A. 1948) and *In re Hahn,* 84 *N. J. Eq.* 523 (Ch.), motion to dismiss appeal den. 85 *N. J. Eq.* 510 (E. & A. 1915) (setting aside fees based on contingency) with *Hughes v. Eisner, supra; Grimm v. Franklin,* 102 *N. J. Eq.* 198 (Ch. 1928); *Soper v. Bilder,* 87 *N. J. Eq.* 564 (Ch. 1917); *Hassell v. Van Houten,* 39 *N. J. Eq.* 105 (Ch. 1884) (upholding contingent fees).

Aside from whether respondent believed that he was guaranteed payment from the estate without regard to the outcome of the will contest, he had no excuse for not pursuing the well-trod path to the court for the allowance of fees in probate matters. His plea of ignorance in these circumstances is virtually sham. As noted, he quickly learned of the availability of reasonable alternatives. There simply was no legal basis for his intransigence in insisting that his fee be based only upon the original contingency of success. That this insistence endured after that success was achieved can be equated only with a form of overreaching — that he could gain more in fees under his contract than might be allowed by the court upon a fee application. His relentless insistence upon enforcing this agreement, knowing that it was founded upon material misrepresentations, was unconscionable. This course of behavior was tantamount to overreaching and violated disciplinary rule. DR 2–106(D).

In its totality, respondent's conduct was unethical and in its fraudulent and overreaching aspects was clearly inimical to the proper administration of justice. DR1–102(A)(5). Accordingly we uphold the determination of the Disciplinary Review Board that respondent violated disciplinary rules, DR 1–102(A)(4), DR 1–102(A)(5) and DR 2–106(D).

## III

Certain other issues have been addressed by the parties, as well as the ethics tribunals, in these proceedings. They do not, in our view, alter our conclusion that respondent is guilty of disciplinary violations. They do, however, obtrude upon consideration of appropriate discipline.

Respondent takes serious issue with the Ethics Committee's interpretation of the net estate in the contingent fee contract. In his view the Ethics Committee erroneously calculated the will contest fee at between $75,000 and $100,000 by taking 15% of the gross estate, which had been estimated at $500,000 to $700,000. The error was critical, respondent noted in his brief, surmising that the huge fee estimated was *"probably the foundation for the erroneous conclusion of unethical conduct reached by the Committee."* (Respondent's emphasis). The much higher figure posited by the Ethics Committee was not the subject of any express finding by the Disciplinary Review Board.

We have noted that respondent has offered other plausible constructions of the term "net estate" in the contingent fee agreement so that it is readily possible to conclude that the anticipated will contest fee originally might have been in the range of $35,000 to $40,000. Moreover, respondent did ultimately settle his fee dispute. Although it is not clear whether the final settlement figure was $50,000 or $60,000, only a portion of this, probably not more than $5,000 or $10,000, was attributable to the will contest. The disciplinary Review Board believed this settlement was itself based on outrageous claims made by respondent for a contingency fee in the area of $100,000 to $125,000. There is some evidential basis for accepting respondent's contentions, however, that the fees which featured in the settlement discussions and compromise were not only considerably less than found by the board, but involved *aggregate* fees, including those chargeable for services by respondent as executor, attorney for the estate and proponent in the will contest. While we agree with

the Board that there were, undoubtedly, fee claims for overlapping services, respondent's monetary ambitions, albeit overreaching, were not shown by clear and convincing evidence to be quite as egregious as thought by the Board.

In this vein, we concur with the tribunals below that, in view of the short time frame within which the will contest was concluded, respondent did not perform extensive services. Nevertheless, respondent's success should not be discounted. The disciplinary rules recognize that an attorney's skill in vindicating his client's interests and the novelty and difficulty of the problem before him are additional factors to be considered in reviewing the adequacy of fees. DR 2–106(A) (1), (4). It is clear that respondent obtained an excellent result for his client which is entitled to some mitigating weight in assessing the reasonableness of his conduct.

On balance, it is our conclusion that the Disciplinary Review Board determined soundly on clear and convincing evidence in the record before it that respondent was guilty of unethical conduct in violation of disciplinary rules DR 1–102(A)(4), DR 1–102(A)(5) and DR 2–106(D). The crux of his professional misconduct involved his unfair and oppressive treatment of his client at a point when she was peculiarly vulnerable and his inexplicable persistence in that mode of behavior after he knew better. His obtuseness in this regard, an attitude characterized by the Disciplinary Review Board as a lack of contrition or remorse, is difficult to fathom. We accord somewhat greater weight than did the Board, however, to the circumstances that respondent here lacked expertise in probate matters and acted unwisely; his judgment was warped to a great extent by the unexpected and superb result he secured for his client; also, the fee claimed was apparently less than that assumed by the Board and, it was settled, presumably to the benefit of all concerned. We further note as a mitigating factor respondent's otherwise unblemished record.

The Court therefore concludes that respondent's breach of its disciplinary rules warrants the imposition of sanctions

but these should, appropriately, be less severe than recommended by the Disciplinary Review Board. Accordingly, the interests of the parties and the public will be properly served by respondent's suspension from the practice of law for a period of six months. He shall reimburse the Administrative Office of the Courts for the actual costs of disbursements for stenographic transcripts.

So ordered.

*For suspension*—Chief Justice HUGHES and Justices MOUNTAIN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER —6.

*Opposed*—None.

## ORDER

In the Matter of EDWARD GARY REISDORF, an attorney at law.

It is ORDERED that EDWARD GARY REISDORF of Springfield be suspended from the practice of law for six months and until the further order of the Court, effective July 9, 1979; and it is further

ORDERED that EDWARD GARY REISDORF be and hereby is restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that respondent comply with all the regulations of the Disciplinary Review Board governing suspended, disbarred or resigned attorneys.